**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**YELLOW PAGES PHOTOS, INC.,**

       **Plaintiff,**                       **CASE NO.: 8:17-cv-00388- WFJ-CPT**

v.

**TATA CONSULTANCY SERVICES**
**LIMITED, INC.,**

       **Defendant.**
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Yellow Pages Photos, Inc. ("YPPI"), responds as follows in opposition to the Motion for Summary Judgment [Dkt. #103] (the "Motion") filed on June 7, 2019, by Defendant Tata Consultancy Services Limited, Inc. ("Defendant" or "Tata").

    **I.**        **INTRODUCTION**

Tata's Motion should be denied in its entirety for multiple reasons. First, many <u>disputed</u> material facts are inaccurately characterized in Tata's Motion as "uncontroverted". Other so-called statements of facts are just argumentative interpretations of events. Second, although Tata states that it set forth "all material facts necessary for decision" on its Motion, Tata simply ignored many material facts that demonstrate its Motion should be denied. Third, Tata's primary argument, that no evidence shows Tata created the infringing ads at issue, is wrong. Such evidence does exist and is presented in this response. Fourth, Tata's arguments that YPPI is "estopped from asserting this claim under three separate doctrines" are meritless. Tata was not (and could not have been) a party to any prior proceeding with YPPI and the

claims in the asserted prior cases covered different activities and time periods than those in this case. Finally, there is no basis to "dismiss" YPPI's request that this Court order a disgorgement of Tata's profits as a remedy for Tata's copyright infringement.

    **II.**    **TATA'S SUPPOSEDLY "UNCONTROVERTED" MATERIAL FACTS ARE DISPUTED, INCOMPLETE, AND ARGUMENTATIVE**

Many of the assertions contained in the section of Defendant's Motion titled "Statement of Material Facts" are disputed, incomplete, and argumentative. YPPI discusses the problems with the following italicized supposed "uncontroverted" "material facts", which are listed by the numbered paragraph as those statements occur in Tata's Motion[1]:

    2.    *YPPI is a Florida Company that owns the copyrights to a collection of stock images*. In fact, YPPI owns the copyrights to not "a collection of stock images", but to thousands of stock <u>photographic</u> images grouped into <u>hundreds of collections</u>. *See* Declaration of William Trent Moore, para. 3 (hereinafter "Moore Dec.", attached hereto as Exhibit A).

    4.    *In 2001, Verizon Directories Corp., the predecessor to Dex Media, agreed to pay $660,000 for a license (the "License") to use 5,000 of YPPI's stock images (the "Licensed Images"). Under the License, Verizon Directories "and all of its affiliates" received the "perpetual" and "unlimited" right to use 5,000 of YPPI's stock images (the "Licensed Images") in "print, electronic or other medium that may be used by Verizon Directories for publication of directories without limit, ROYALTY FREE."* Tata provides <u>no support</u> for its assertion that "Verizon Directories Corp." is the "predecessor to Dex Media". Tata's Motion also fails to inform this Court that the Verizon License contained an express restriction on

---

[1] Tata's citations contained its Statement of Material Facts are omitted for the sake of brevity.

2

transferring the "Licensed Images" to "other parties". *See* Tata's Motion, Ex. 2 [Dkt. #103-3], p. 18.

6. *In July 2007, Idearc and YPPI amended the License to make clear that "**contractors** of Idearc"—that is, third party companies who helped Idearc create ads—were authorized "users" of YPPI's Licensed Images.* Nowhere in the Verizon License is the term "contractors" defined as Tata defines it. Tata's definition is mere argument. Moreover, Tata fails to note that the Amendment to the Verizon License expressly preserves the restriction on YPPI images being transferred "to other parties". *See* Tata's Motion, Ex. 2, p. 18.

7. *. . . As a result, SuperMedia succeeded to Idearc's rights under the License.* Tata's counsel is well aware that YPPI asserts that the Verizon License did not pass through the Idearc bankruptcy. Prior to Idearc's bankruptcy, the YPPI images were transferred to Tata and others in breach of the Verizon License. Idearc failed to disclose this breach to YPPI or the Idearc bankruptcy court and the breach was never cured. *See* YPPI's Response in Opposition to Tata's Motion to Dismiss Amended Complaint [Dkt. #73], p. 9; *see also* Motion, Ex. 14 [Dkt. # 103-18], pp. 9-10, 18-21.

8. *. . . By mid-June 2011, SuperMedia had removed the entire catalog of YPPI's Licensed Images from SuperMedia's ad creation systems and stock art library. From that date forward, none of SuperMedia's in-house artists, contractors, or subcontractors could access the Licensed Images to create new ads. No new ads containing YPPI images were created for SuperMedia or Dex Media after June 2011.* This "fact" is contested. YPPI has identified its images being used in thousands of ads in Dex Media published, SuperMedia-branded, yellow

3

pages directories from 2014 into 2019. *See* Moore Dec., para. 4. If YPPI's images were "removed" in June 2011, they would not be appearing in thousands of ads so many years later.

   9. . . . *TCS was "unable to select" any of YPPI's Licensed Images for inclusion in ads because they had been removed from SuperMedia's ad creation systems and art library in June 2011. TCS has no records indicating that TCS created any ads containing YPPI images for SuperMedia or Dex Media.* As stated above, YPPI's images were most definitely <u>not</u> removed from SuperMedia's ad creation systems and art library. *See Id.*, para. 5. Tata failed to inform the Court that ███████████████████████████████████████ ███████████████████████. *See* January 17, 2019, Deposition of Richard Rajamani, Tata's designated corporate representative ("Rajamani Depo."), p. 59, lines 10-12, attached hereto as Exhibit B. ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████████████. *See Id.*, p. 104, line 6 through p. 110, line 19. ██████████████████████████████ ██████████████████████████████████████████████████████ ████. *See* Id., p. 206, line 22 through p. 208, line 4.

   10. . . . *TCS has no records suggesting that TCS created any ads containing YPPI images for either YP or Print Media.* This is similarly misleading and redundant with the statement in paragraph 9 above.

   **A. The Super Media Litigation**. This section of Tata's "Statement of Material Facts" is particularly argumentative. More importantly, it omits a critical finding on April 4, 2016, by the presiding bankruptcy judge -- SuperMedia was found to have breached the Verizon

License and to have infringed YPPI's copyrights prior to the Idearc bankruptcy by transferring 20,214 YPPI copyrighted images, including transferring 5,000 YPPI images to Tata. *See* Motion, Ex. 1 [Dkt. #103-2], pp. 19-20. Finally, the concessions made by YPPI's counsel in that case (not YPPI's counsel here) were made prior to the April 4, 2016, Delaware bankruptcy judge's finding that the Verizon License was breached by the undisclosed and unauthorized transfers of YPPI's images to Tata and others. Such "concessions" should be given no weight.

    ***B. The Dex Media Litigation***. This section of Tata's "Statement of Material Facts" is also highly argumentative. Like the section on the "SuperMedia Litigation", it omits a critical fact – the rulings against YPPI are all on appeal to the United States Court of Appeals for the Third Circuit.

    20.    *On April 29, 2016, YPPI filed a copyright lawsuit in this Court against SuperMedia's parent, Dex Media, alleging that Dex Media had infringed YPPI's copyrights by using the same Licensed Images in the same ads at issue in the SuperMedia Litigation.* The case referenced does not involve the "same ads at issue in the SuperMedia Litigation." Rather, given the three (3) year statute of limitations for copyright infringement claims (17 U.S.C. §507(b)), the Dex Media case related to those ads published by Dex Media (not SuperMedia) since April 30, 2013, after the discharge was entered in the SuperMedia bankruptcy. Those ads were not, and could not have been, at issue in the SuperMedia Litigation, which dealt with pre-petition and pre-discharge activities of SuperMedia (not Dex Media).

    26.    *. . . YPPI, however, went to great lengths to conceal the fact that its claims in this litigation were related to the Dex Media Litigation. . . . Only after TCS filed a motion to dismiss for failure to state a claim under Rule 12(b)(6), did YPPI actually inform this Court*

5

*that its claims in this action do, in fact, relate to the SuperMedia and Dex Media Litigations.* Tata unfairly and unprofessionally casts aspersions on YPPI for the decision of its counsel. YPPI's counsel, aware that Tata was not party to either the SuperMedia Litigation or the DexMedia Litigation and believed in good faith that this case was not related to either of those cases. *See* Declaration of Richard E. Fee ("Fee Dec."), paras. 4-6, attached hereto as Exhibit C. After Tata asserted otherwise, YPPI's counsel filed amended certifications disclosing the SuperMedia and Dex Media Litigations out of an abundance of caution and to alleviate Tata's professed concerns. *See* Fee Dec., para. 7.

27.  *On December 18, 2017, YPPI filed the Amended Complaint. Without any supporting facts, the Amended Complaint asserts that TCS has created "many thousands" of ads using YPPI images for Dex Media, YP, and Print Media.* YPPI has facts. YPPI has identified approximately 20,000 ads published by YP and Print Media since April 1, 2014, bearing its images. *See* Moore Dec., para. 6. These ads have all been disclosed to Tata's counsel (who also represent YP and Print Media) in the case pending before this Court styled: *Yellow Pages Photos, Inc. v. YP LLC and Print Media LLC*, Case No.: 8:17-cv-764-CEH-JSS. ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████. *See* Rajamani Depo., p. 30, lines 4-10; p. 49, line 24 through p. 50, line 25; p. 62, line 17 through p. 63, line 3; p. 73, line 11 through p. 74, line 6. Similarly, YPPI identified many thousands of ads published by Dex Media containing YPPI's copyrighted images since May 1, 2013. *See* Moore Dec., para. 4. ███ ████████████████████████████ *See* Rajamani Depo., p. 60, lines 12-18.

6

### III.     EVIDENCE TATA CREATED ADS WITH YPPI COPYRIGHED IMAGES

Tata's primary argument for summary judgment relies on a false premise – "there is no evidence that [Tata] created any of the allegedly infringing ads at issue." Motion, p. 12. Tata is wrong. The copyright infringement claims in this case relate to Tata's acts since February 15, 2014, three years before the date YPPI filed its Complaint on February 15, 2017. As set forth above, ███████████████████████████████████████████████████

███████████████████████████████████████ *See* Rajamani Depo., p. 30, lines 4-10; p. 49, line 24 through p. 50, line 25; p. 60, lines 12-18; p. 62, line 17 through p. 63, line 3; p. 73, line 11 through p. 74, line 6. These are the ads, websites, and landing pages at issue.

YPPI also identified specific ads created by Tata. Copies of those ads are attached hereto as Composite Exhibit D. Those ads, shown on customer proofs, identify "TCS" as the location (the "LOC CODE") where the ads were created. *See* August 1, 2018, Deposition of Valerie Dale ("Dale Depo"), p. 113, line 23 through p. 114, line 12; p. 115, line 25 through p. 116, line 2; p. 117, line 1 through p. 119, line 4; p. 119, lines 11-17; p. 120, line 23 through p. 121, line 4; Exs.19-24, *see* Composite Exhibit D. Valerie Dale, a former Dex Media employee, testified that "LOC CODE" stood for 'location code" and she never heard of the acronym "TCS" standing for anything other than "Tata Consultancy Services" the entire time working for the company last known as Dex Media. *See Id.*, p. 113, line 14 through p. 114, line 12.

Tata has been cagey about the ads it creates. When confronted with the ads attached hereto as Composite Exhibit D, ████████████████████████████████████

████████████████████████████████████████████████ *See* Rajamani Depo, p. 102, line 18 through p. 103, line 5. ████████████████████████████

7



███████████████ *See Id.*, p. 103, lines 6-24. ████████████████

████████████████████████████████ *See Id.*, p. 104, line 20 through p. 110, line 7. ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ *See Id.*, p. 110, lines 8-19. ████████████████████████

████████████████████████████ *See Id.*, p. 206, line 22 through p. 208, line 4. This Court should not reward such gamesmanship with a grant of summary judgment.

### IV.    TATA'S THREE "ESTOPPEL" ARGUMENTS LACK MERIT

Tata's fall-back argument for summary judgment is a collage of estoppel arguments based on rulings by a Delaware bankruptcy judge, all of which are currently on appeal to the United States Court of Appeals for the Third Circuit. *See* Fee Dec., para. 8.

First of all, Tata's estoppel arguments are not dispositive of this case. Even if those estoppel arguments were correct (and they most certainly are not), they would only bar YPPI's claims against Tata relating to Tata's creation of ads using YPPI images for Dex Media – not Tata's creation of such ads and digital media for YP and Print Media.

Second, the bankruptcy judge's rulings in the Dex Media case relied upon by Tata was itself based on the doctrines of claim preclusion, collateral estoppel, and judicial estoppel stemming from the SuperMedia Litigation. Thus, Tata is attempting a double bootstrap – claiming that it benefits from a ruling in a bankruptcy case between YPPI and Dex Media, which the bankruptcy judge found was precluded by rulings made in a bankruptcy case

between YPPI and SuperMedia. Such is not the stuff of summary judgments.

### A. Claim Preclusion Does Not Apply To YPPI's Claims Against Tata

Tata argues that rulings by a Delaware bankruptcy judge in a case against Dex Media trigger claim preclusion (a/k/a *res judicata*) as to YPPI's claims against Tata in this case. Tata is wrong.

#### 1. Required elements of claim preclusion (*res judicata*)

Eleventh Circuit precedent dictates that a claim will be barred by the doctrine of claim preclusion "if **all four** of the following elements are present:

(1) there is a final judgment on the merits;

(2) the decision was rendered by a court of competent jurisdiction;

(3) the parties, or those in privity with them, are identical in both suits; and

(4) the same cause of action is involved in both cases."

*Ragsdale v. Rubbermaid, Inc.*, 193 F. 3d 1235, 1238 (11th Cir. 1999) (emphasis added). The parties agree on these elements. *See* Motion, p. 14.

#### 2. The elements of claim preclusion are not present

Although the first element, a final judgment, is met, prudence dictates that the Court be wary. The final judgment relied upon by Tata is currently on appeal to the United States Court of Appeals for the Third Circuit. *See* Fee Dec., para. 8. As such, it is susceptible to being overturned in whole or in part. This Court's reliance on such a precarious ruling would risk a procedural and appellate imbroglio.

As to the second element, there is no dispute that the bankruptcy court was acting as a court of competent jurisdiction.

The third essential element of claim preclusion, whether the parties or their privities in both cases are identical, is absent.  Tata's Motion does not argue (nor can it) that YPPI previously litigated against Tata.  YPPI **never** before litigated against Tata in any forum.  *See* Moore Dec., para. 7.  If there is not such privity, there is no claim preclusion based on the Dex Media Litigation.

Tata's Motion argues that Tata "is in close privity with Dex Media, the Defendant in the Dex Media Litigation." *See* Motion, p. 15.  Tata's Motion, however, ignores a basic tenet of claim preclusion – "whether a party is in privity with another for preclusion purposes is a **question of fact**".  *E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1285 (11th Cir. 2004) (emphasis added).   Yet, Tata provides this Court with no evidence that Tata and Dex Media should be found to be in privity.  Instead, Tata argues that its interests were "adequately represented" by Dex Media in the bankruptcy proceeding.  This issue, referred to as "virtual representation" in Eleventh Circuit cases, is also a fact question.  *See Id*. at 1287.

The Eleventh Circuit employs a four-factor test "in determining whether there is virtual representation: whether there was 'participation in the first litigation, apparent consent to be bound, apparent tactical maneuvering, [and] close relationships between the parties and nonparties.'" *Id*. Tata's Motion ignores these factors and for good reason – they are clearly absent here. First, Tata did not participate (and does not argue it participated) in the Dex Media Litigation.  Second, Tata proffers no evidence that it consented to be bound by the Dex Media Litigation.  Third, there is no evidence that Tata participated in Dex Media's tactical maneuvering in the Dex Media Litigation.  Fourth and finally, there is no evidence of a "close relationship" between Tata and Dex Media – only that of a supplier/consultant (Tata) and its

customer (Dex Media). This is true even though Tata and Dex Media share the same legal team (albeit in different cases). *See* Id. at 1288, citing *South Central Bell Tel. Co. v. Alabama*, 52 U.S. 160, 168 (1999).

The fourth element of claim preclusion – the same cause of action is involved in both cases – is also absent. In this case, YPPI's cause of action is based on the actions of Tata, not those of Dex Media. YPPI's Amended Complaint [Dkt. #58] alleges that Tata has been and is infringing YPPI's federally-registered copyrights:

> Since February 16, 2014, Tata has been copying, transmitting, and using many hundreds of YPPI Images in connection with its creation and production of many thousands of advertisements for telephone directories published by YP, Print Media, and Dex Media for municipalities and counties nationwide, including many advertisements appearing in directories that have been distributed and used in the Middle District of Florida ("Tata's Infringing Ads").

Amended Complaint, para. 18.

> Since February 16, 2014, Tata has also been copying, transmitting, and using YPPI Images in connection with its creation and production of webpages and other web-based media for customers of YP and Dex Media ("Tata's Infringing Web-based Media").

Amended Complaint, para. 20.

> At no time has YPPI licensed or otherwise authorized Tata to copy, transmit, or use any of the YPPI Images in connection with Tata's Infringing Ads, Tata's Infringing Web-based Media, or for any purpose.

> Tata's copying, transmitting, and use of YPPI Images in connection with Tata's Infringing Ads and Tata's Infringing Web-based Media directly infringes YPPI's federally registered copyrights in those YPPI Images in violation of the United States Copyright Act, 17 U.S.C. § 501.

Amended Complaint, paras. 24, 25. In sum, YPPI alleges that Tata's copying, transmission, and use of YPPI's copyrighted images "[s]ince February 16, 2014" to create advertisements and web-based media for Dex Media, YP LLC, and Print Media LLC infringes YPPI's

11

copyrights.

YPPI's claims against Tata were never raised, and could not have been raised, in the Dex Media bankruptcy case. The Delaware bankruptcy court did not possess jurisdiction over Tata. The factual issue in the Dex Media bankruptcy case, whether Dex Media infringed YPPI's copyrights by publishing infringing ads containing YPPI's copyrighted images in its yellow pages directories, is separate and apart from the issue here -- whether Tata used YPPI's copyrighted images in creating ads for YP, Print Media, and Dex Media.

### B.     Collateral Estoppel Does Not Bar YPPI's Claims Against Tata

Tata next argues that, somehow, YPPI is precluded from "relitigating issues" already decided by combining rulings made by the bankruptcy court in the SuperMedia Litigation and in the Dex Media Litigation. *See* Motion, pp. 18-21. Again, Tata is wrong.

#### 1.     Required elements of collateral estoppel

The party relying on collateral estoppel "must show that:

(1) the issue at stake is **identical** to the one involved in the prior proceeding;

(2) the issue was **actually litigated** in the prior proceeding;

(3) the determination of the issue in the prior litigation must have been '**a critical and necessary part' of the judgment** in the first action; and

(4) the party against whom collateral estoppel is asserted must have had a **full and fair opportunity to litigate the issue** in the prior proceeding."

*Pleming v. Universal-Rundle Corp.*, 142 F. 3d 1354, 1359 (11th Cir. 1998) (emphasis added).

#### 2.     Collateral estoppel does not save Tata.

According to Tata's Motion, YPPI's claims against Tata depend on whether Tata's actions alleged to infringe YPPI's copyrights are "without license or permission from YPPI."

Tata's Motion, p. 19.  Tata then asserts that rulings in both the SuperMedia Litigation and the Dex Media Litigation established that a valid license covers Tata's activities for Dex Media (and only Dex Media).  *Id*. at pp. 19 -25.  YPPI strongly disagrees.

Tata's reliance on the SuperMedia Litigation rulings are misplaced.  <u>All</u> of the SuperMedia Litigation rulings relied upon by Tata occurred in 2014. *See* Motion, pp. 19-20.  These ruling were well-over a year <u>before</u> the April 6, 2016, ruling in which SuperMedia was found to have <u>breached</u> the Verizon License and, therefore, to have infringed YPPI's copyrights prior to the Idearc bankruptcy by transferring 20,214 YPPI copyrighted images, including transferring 5,000 YPPI images to Tata.  *See* Motion, Ex. 1 [Dkt. #103-2], pp. 19-20.  Obviously, Tata cannot enjoy rights under the Verizon License through SuperMedia when SuperMedia was found to have earlier breached the same license.  Thus, the question of Tata enjoying rights under the Verizon License has been settled by the Delaware bankruptcy judge – but <u>against</u> Tata, not in its favor.

Tata also played games with its collateral estoppel defense during discovery.  When asked direct questions about the facts on which Tata based its collateral estoppel defense,



Rajamani Depo, p. 83, lines 1-6 (emphasis added).

13



*Id*., p. 83, line 22 through p. 84, line 2 (emphasis added).



*Id*., p. 27, lines 15-25 (emphasis added).



*Id*., p. 28, lines 8-11 (emphasis added).

### C.   **Judicial Estoppel Does Not Bar YPPI's Claims Against Tata**

Tata's last-ditch estoppel argument fares no better than the others.  Judicial estoppel is clearly not applicable to this case.

### 1. Required elements of judicial estoppel.

YPPI agrees with Tata that the Eleventh Circuit requires that a two-part test be satisfied before applying judicial estoppel:

14

> (1) the party took an inconsistent position under oath in a separate proceeding, and
> (2) these inconsistent positions were "calculated to make a mockery of the judicial system."

*Slater v. United States Steel Corp.*, 871 F. 3d 1174, 1181 (11th Cir. 2017), *quoting Burns v. Pemco Aeroplex, Inc.*, 291 F. 3d 1282, 1285 (11th Cir. 2002).

### 2. Judicial estoppel is factually inapplicable.

First, Tata's Motion failed to articulate any clear "inconsistent position under oath" that YPPI has allegedly taken. This failing is fatal to its argument. Instead, Tata's only cites in its judicial estoppel portion of the Motion is to legal argument in YPPI's Response in Opposition to Tata's Motion to Dismiss Amended Complaint [Dkt. # 73] and YPPI's Amended Complaint itself [Dkt. #58]. *See* Motion, p. 22. Neither document is "under oath". Under the very Eleventh Circuit precedent cited by Tata for the elements of judicial estoppel, Tata's argument fails. *See Slater v. United States Steel Corp.*, 871 F. 3d 1174, 1181 (11th Cir. 2017) (articulating the first prong of the two-prong test for judicial estoppel as "whether (1) the party took an inconsistent position **under oath** in a separate proceeding" (emphasis added)).

Moreover, YPPI argues in this case that Tata is not covered by the Verizon License for two reasons: (1) it was breached in 2005 or 2006, and (2) because the breach was not cured, the Verizon License could not have been assumed in the Idearc bankruptcy. The Verizon License terminated when it was breached, as determined by the Delaware bankruptcy court in its April 4, 2016 ruling. *See* Motion, Ex 1, pp. 8, 11-12, 19-20. The asserted prior inconsistent positions of YPPI (where YPPI did not challenge the viability of the Verizon License) all occurred before the Delaware bankruptcy court determined the Verizon License was breached. *See* Motion, pp. 6-8. YPPI's position that the Verizon license could not have been assumed in

the Idearc bankruptcy is also based on the Delaware bankruptcy court's April 4, 2016 finding that Idearc failed to disclose or cure the breach in Idearc's bankruptcy proceeding. *See* Motion, Ex 1, pp. 11-12.

Second, YPPI's supposed inconsistent positions were not "calculated to make a mockery of the judicial system". Tata's own Motion make this clear. Tata argues in the judicial estoppel portion of its Motion that YPPI took the position in the SuperMedia Litigation that Tata was a "contractor" under the Verizon License. *See* Motion, p. 22. However, Tata takes an inconsistent position just two pages earlier, stating that YPPI's principal "testified that he did **not** believe Tata was a "contractor" under the License." *See* Motion p. 20.[2] Thus, even according to Tata, YPPI's position that Tata is not a "contractor" is consistent with its prior position asserted in the SuperMedia case. Further, as set forth above, YPPI's position that Tata has no rights under the Verizon License is based on the April 4, 2016 rulings of the Delaware bankruptcy court – a sound explanation for changing its position that was asserted before that ruling. No evidence exists to the contrary.

## V.    YPPI'S CLAIM FOR DISGORGEMENT OF PROFITS

Finally, this court should deny Tata's argument that YPPI's claims for disgorgement of profits "should be dismissed". *See* Motion, p. 24. Tata bases its argument on the thin assertion that "there is no evidence that TCS garnered such profits". *See Id*. Once again Tata is wrong.

███████████████████████████████████████

---

[2] It could be argued that Tata seeks to make a mockery of this proceeding by its inconsistent positions in the very same Motion.

16

██████████████████████████████████████ *See* Rajamani Depo., p. 30, lines 4-10; p. 49, line 24 through p. 50, line 25; p. 60, lines 12-18; p. 62, line 17 through p. 63, line 3; p. 73, line 11 through p. 74, line 6. YPPI has identified Tata-created ads containing YPPI images. *See* Composite Exhibit D; Dale Depo, p. 113, line 23 through p. 114, line 12; p. 115, line 25 through p. 116, line 2; p. 117, line 1 through p. 119, line 4; p. 119, lines 11-17; p. 120, line 23 through p. 121, line 4; Exs.19 -24. ████████████████████████████████ ████████████████████████████████████████████████ *See* Rajamani Depo., p. 68, line 14 though p. 70, line 16.

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████

*See Id.*, p. 175, lines 17-20 (emphasis added).

████████████████████████████████████████████

*See Id.*, p. 176, lines 17-20 (emphasis added).

████████████████████████████████████████████

*See Id.*, p. 177, lines 8-13 (emphasis added). This Court should not grant summary judgment or, as Tata requests, "dismiss" YPPI's claim for disgorgement of Tata's profits on this record.

17

## VI. CONCLUSION

For all the reasons above, this Court should deny Defendant's Motion in its entirety.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 28, 2019, I filed a true and accurate copy of the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following: **Gary R. Trombley, Esq.** and **Ronald P. Hanes, Esq.,** Trombley & Hanes, P.A., 707 N. Franklin St., 10th Floor, Tampa, FL 33602 (gtrombley@trombleyhaneslaw.com and rhanes@trombleyhaneslaw.com); **Eric F. Leon, P.C., Kuangyan Huang, Esq.,** and **Nathan E. Taylor, Esq.,** Latham & Watkins LLP, 885 Third Ave., New York, NY 10022 (eric.leon@lw.com, kuan.huang@lw.com, and nathan.taylor@lw.com).

>*/s/ Richard E. Fee*
>Richard E. Fee
>Florida Bar No. 813680
>Kathleen M. Wade
>Florida Bar No. 127965
>Cristina A. Castellvi
>Florida Bar No. 55519
>FEE & JEFFRIES, P.A.
>1227 N. Franklin Street
>Tampa, Florida 33602
>(813) 229-8008
>(813) 229-0046 (Facsimile)
>rfee@feejeffries.com
>kwade@feejeffries.com
>ccastellvi@feejeffries.com
>aperez@feejeffries.com
>
>Counsel for Plaintiff,
>Yellow Pages Photos, Inc.