**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**YELLOW PAGES PHOTOS, INC.,**

        **Plaintiff,**                **CASE NO.: 8:17-cv-00388- WFJ-CPT**

**v.**

**TATA CONSULTANCY SERVICES**
**LIMITED, INC.,**

        **Defendant.**

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S SUPPLEMENTAL**
**MOTION FOR SUMMARY JUDGMENT [REGARDING THE AT&T LICENSE]**
**[DKT. #154] AND SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**
**REGARDING THE VERIZON LICENSE [DKT. #167]**

    Plaintiff, Yellow Pages Photos, Inc. ("YPPI"), responds as follows in opposition to the

Supplemental Motion for Partial Summary Judgment [Dkt. #154] ("Tata's First Supplemental

SJ Motion") filed on February 18, 2020, and Supplemental Motion for Summary Judgment

Regarding the Verizon License [Dkt. #167] ("Tata's Second Supplemental SJ Motion") filed

on February 28, 2020, by Defendant Tata Consultancy Services Limited, Inc. ("Tata").

**I.**      **INTRODUCTION**

    Tata failed twice to convince this Court to enter summary judgment in its favor.

Specifically, this Court denied Tata's Motion for Summary Judgment [Dkt. #103] and Tata's

Motion for Reconsideration [Dkt. #126]. Despite this fact, Tata is now taking a third and fourth

bite at the summary judgment apple.

    Tata's First Supplemental SJ Motion should be denied for multiple reasons. The AT&T

License scope does not cover Tata's use of YPPI's copyrighted images. First, Tata did not use

YPPI's copyrighted images at "AT&T's business locations" as expressly required by the license grant in the AT&T License.  Second, neither Tata nor its employees were "licensed End Users" within the scope of the license grant.  At the very least, the AT&T License is ambiguous regarding the ability of YPPI to use YPPI's images and, consequently, the interpretation of that license presents fact questions for a jury to decide.

Additionally, Tata lacks rights under the AT&T License because YP LLC and Print Media LLC (the yellow pages publishers under which Tata claims rights in the AT&T License) failed to comply with an express condition of that license.  Finally, neither YP LLC nor Print Media LLC have any rights under the AT&T License and, therefore, Tata cannot claim that its use of the YPPI copyrighted images in making ads for those parties is covered by the AT&T License.[1]

Tata's Second Supplemental SJ Motion fares no better than its first.  Tata's argument that *res judicata* a/k/a "claim preclusion" bars YPPI's avoidances to Tata's affirmative defense of license has no legal support.  Even if res judicata somehow applied to an avoidance to an affirmative defense, it is clear that the requite elements for res judicate simply are not present here.  Nor does Tata's argument about the termination provision of the Verizon License justify entry of summary judgment.  Tata's argued interpretation of that termination provision would require the Court to commit legal error by inserting a notice provision where none exists.

---

[1] Judge Honeywell rejected this argument in her November 27, 2019 Order [Dkt. #196].  YPPI, however, intends to appeal that ruling following entry of final judgement in that case and presents and preserves that same argument here because YPPI believes it is both meritorious and dispositive.

Finally, Tata's argument that summary judgment should be entered against YPPI's argument that it was fraudulently induced into to the 2007 Amendment to the Verizon License makes no sense in light of the facts here.  When it filed suit against Tata, YPPI believed (and still believes) that the Verizon License ended no later than 2009.  Tata was never a party to the Verizon License or the 2007 Amendment. YPPI's pleadings make no reference to the Verizon License or the 2007 Amendment. Thus, Tata's argument that YPPI should have sued to rescind the 2007 Amendment to the Verizon License before or as part of its copyright claim against Tata borders on absurd.

## II.     DISPUTED ISSUES OF FACT CONTAINED IN TATA'S SO-CALLED "STATEMENT[S] OF UNDISPUTED FACTS".

YPPI disputes the following paragraphs of Tata's "Statement of Undisputed Material Facts" in its First Supplemental SJ Motion:

4.      YPPI disputes that Tata has attached the AT&T License, in its entirety.  Tata attached the AT&T License without either of its two amendments. For completeness, YPPI attaches the AT&T License, with its two amendments, as Exhibit A hereto.

7.      YPPI disputes that "ATT Advertising is the party to the ATT License." Although Judge Honeywell made such a finding in the Case styled *Yellow Pages Photos, Inc. v. YP LLC and Print Media LLC*, Case No.:  8:17-cv-764-CEH-JSS (the "YP Case"), YPPI respectfully contests that finding.  As argued below, AT&T Services, Inc. ("AT&T Services") and not ATT Advertising was the AT&T entity that was a party to the AT&T License.

8.      Because YPPI disputes that ATT Advertising was a party to the AT&T License, it is also disputed that YP LLC and Print Media LLC enjoyed rights under the AT&T License.

YPPI also Tata's assertion disputes that use of YPPI images by YP LLC and Print Media "did not constitute copyright infringement."[2]

YPPI dispute the following paragraphs of Tata's "Statement of Undisputed Material Facts" in its Second Supplemental SJ Motion:

12.     YPPI disputes Tata's highly argumentative and inaccurate characterizations of YPPI's positions taken in the *YPPI v. Dex Media* Case filed in the Delaware Bankruptcy Court (the "Dex Media Litigation").

13 – 14.     YPPI disputes that it ever litigated, or that the Delaware Bankruptcy Court ever ruled upon, YPPI's argument that the 2007 Amendment to the Verizon License was procured by fraudulent inducement. Such an argument was never pled, reduced to writing, litigated, or ruled upon by the Delaware Bankruptcy Court (or ruled upon by any court for that matter).  Tata presents no evidence otherwise.

20.     YPPI disputes Tata's highly argumentative, disparaging, and inaccurate characterizations of YPPI's positions taken in this case and YPPI's supposed thought process behind filing this case.

### III.     THE SUMMARY JUDGMENT STANDARD

The following well-established summary judgment standard and principles applicable to this case bear noting:

> In determining whether a genuine issue of material fact exists, the Court ***must*** view the evidence and draw all factual inferences therefrom in a light most favorable to the non-moving party and ***must*** resolve any reasonable doubts in the non-moving party's favor. (Emphasis added).

---

[2] Although Judge Honeywell made such a finding in the YP Case, YPPI respectfully disputes those findings.

*Martin v. Allstate Prop. and Casualty. Ins. Co.*, 2019 WL1003166 *5 (M.D. Fla. March 1, 2019), citing *Skop v. City of Atlanta*, 485 F. 3d 1130, 1136 (11th Cir. 2007).   Additionally, summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Martin*, 2019 WL1003166 *5, quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV.     TATA'S FIRST SUPPLEMENTAL SJ MOTION MUST BE DENIED

Tata's First Supplement SJ Motion claims that Tata had the right to use YPPI's copyrighted images under the AT&T License.   Moreover, Tata argues that the Court can determine such as a matter of law.  Tata is wrong on both counts for multiple reasons.

YPPI and Tata agree that the "laws of the State of Texas" govern the interpretation of the AT&T License.  *See* Exhibit A, AT&T License, p. 4.  The Texas Supreme Court holds the following principles apply to contract interpretation:

> In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument.

> To achieve this objective, courts should examine and consider *the entire writing* in an effort to harmonize and five effect to *all the provisions* of the contract so that none will be rendered meaningless.

> No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument.

> In harmonizing these provisions, **terms stated earlier in an agreement must be favored over subsequent terms**.

> If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law.

> **A contract, however, is ambiguous when its meaning is uncertain and doubtful or it is reasonable susceptible to more than one meaning**.
>
> Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered.
>
> **When a contract contains an ambiguity, the granting of a motion for summary judgment is improper** because the interpretation of the instrument becomes a fact issue.

*Coker v. Coker*, 650 S.W.2d 391, 393-394 (Tex. 1983) (finding contract ambiguous and reversing entry of summary judgment) (citations omitted, italics original, bold added).

> Additionally, under Texas law it is:
>
> well-established that where an ambiguity exists in a contract, the contract language will be construed strictly against the party who drafted it since the drafter is responsible for the language used.

*Gonzalez v. Mission American Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990).  Here, ambiguities in the AT&T License must be construed against its drafter (AT&T and by extension, Tata, which claims rights under AT&T's purported successors in interest).  *See* Declaration of William Trent Moore ("Moore Dec", attached hereto as Exhibit B), para. 4.

The foregoing principles should guide the Court's interpretation of the AT&T License.

### A.    Tata's Use Of YPPI's Copyrighted Images Was Outside The Scope Of The AT&T License

Tata's use of YPPI's copyrighted images fell outside the express scope of the license grant in the AT&T License. Thus, Tata's use of YPPI's copyrighted images is not covered by the AT&T License.

#### 1.   Tata did not use YPPI's copyrighted images at "AT&T's business locations"

First, Tata did <u>not</u> perform its services using YPPI's copyrighted images at "AT&T's

business locations." Rather, it is uncontested that Tata performed all its services using YPPI's copyrighted images for YP LLC and Print Media LLC from Tata's offices in India. *See* January 17, 2019, Deposition of Tata's Corporate Representative, Richard Rajamani, p. 57, lines 4-24 (copies of the cited portions are attached hereto as Exhibit C). This undisputed fact is important because the AT&T License expressly limits the use of YPPI's copyrighted images to use at "AT&T's business locations". The license grant in the AT&T License states:

> Licensor License Grant – Subject to the payment by AT&T of the amount set out in the agreement, Licensor grants to AT&T and its affiliates a non-exclusive, non-transferrable, royalty-free, perpetual license to: (i) copy the Digital Images on to AT&T's server for unlimited End Users (ii) **use the Digital Images in AT&T's business locations** and for AT&T's business purposes only provided that such use is in accordance with the Specifications detained in this Agreement; (ii) make copies of the Digital Images for archive or backup purposes (Emphasis added).

Exhibit A, AT&T License, p. 2.

This Court should, therefore, deny Tata's First Supplemental SJ Motion because Tata's use of YPPI's images thus fell outside the scope of the license grant in the AT&T License and constitutes copyright infringement. Without question, if a licensee "acts outside the permitted scope of its license, it may be held liable for copyright infringement." *Stross v. Redfin Corp.*, 730 Fed. Appx. 198, 203 (5th Cir. 2018); *see also S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989) ("A licensee infringes the owner's copyright if its use exceed the scope of its license."); *Genesys Software Sys, Inc. v. Comerica Bank*, 2013 WL 12126264 *2 (N.D. Tex. April 9, 2013) (use of software "in a way that exceeded the scope of permission given [in a license agreement] . . . is a typical copyright infringement claim"); *Virtual Studios, Inc. v. Royalty Carpet Mills, Inc.*, 2014 WL 12495340 *8 (N.D. Ga. Feb. 10, 2014) (where "the licensee acts outside the scope [of the license], the licensor can bring an action for copyright

infringement."); and *Nimmer On Copyright*, §1015[A] (1999). Thus, even if one assumes that Tata was a "licensee" under the AT&T (which it is not), Tata's use of YPPI's copyrighted images fell outside the scope of the AT&T License and constituted copyright infringement.

If Tata argues that the YPPI images resided on YP LLC or Print Media LLC servers in "AT&T's business locations", that argument still requires denial of its First Supplemental SJ Motion. First, Tata's First Supplemental SJ Motion does not argue or even present evidence that the YPPI images used by Tata were located on servers at "AT&T's business locations."

Second, the AT&T License's express limitation to use at "AT&T's business locations" does <u>not</u> include "and the location of AT&T's affiliates or successors in interest." Only by inserting such omitted phrases into the AT&T License could one conclude that servers in the business locations of YP LLC or Print Media LLC qualify as "AT&T business locations." Such insertion of omitted terms is improper. ***"[C]ourts may not rewrite agreements to insert provisions parties could have included*** or to imply restraints for which they have not bargained." *Tenneco Inc. v. Enterprise Products Co.*, 925 S.W.2d 640, 646 (Tex. 1996).

Finally, it is, at best ambiguous as to whether the "business locations" of YP LLC and Print Media LLC would fall within the meaning of "AT&T's business locations." That ambiguity must be construed against AT&T (and by extension Tata) as the drafter and presents a fact question preventing entry of summary judgment. *See Gonzalez*, 795 S.W.2d at 737; *Coker*, 650 S.W.2d at 394.

    2.  <u>Tata and its employees are not "licensed End Users"</u>

Second, Tata use of YPPI's copyrighted images falls outside the scope of the AT&T License because neither it nor Tata's employees are "<u>licensed</u> End Users". Tata argues in its

First Supplemental SJ Motion that it is an "End User" (Tata avoids using "licensed" in its argument) under the AT&T License and may, therefore, use YPPI's copyrighted images.[3]  Tata is wrong.  The AT&T License states:

> AT&T may place the Digital Images on their **internal intranet** or other common server for access and use by *licensed* **End Users only**.

Exhibit A, AT&T License, p. 3 (emphasis added).  The AT&T License defines "End User":

> An End User is defined as **an individual** that utilizes the high resolution Digital Images for the specific purpose of creating a final image that will be used in print or electronic product(s). These End Users are generally defined as designers and artist.

*Id*.  (Emphasis added).

Critically, in limiting the scope of the license granted, the AT&T License modifies term "End User" by adding the word "licensed" before it.  Under the rules of contract interpretation, the Court must give meaning to the word "licensed" in the phrase "licensed End Users."  Doing so makes it clear that not all End Users, as defined in the AT&T License", may use the YPPI images – only "*licensed* End Users" may do so.

Neither Tata, nor its employees, are "licensed End Users" within the scope of the AT&T License.  It bears noting that Tata is not an "individual", "designer[]", or "artist".  Thus, Tata itself cannot be a "End User", let alone a "licensed" one.  Although Tata's employees who used YPPI's copyrighted images may fall within the "End User" description, they are not "licensed End Users".   The license granted in the AT&T License is expressly granted to "AT&T and its affiliates" and no one else:

> Licensor License Grant – Subject to the payment by AT&T of the amount set out in the agreement, **Licensor grants to *AT&T and its affiliates*** a non-

---

[3] *See* Tata's First Supplemental SJ Motion, pp. 5-7.

exclusive, non-transferrable, royalty-free, perpetual license

Ex. A, AT&T License, p. 2 (emphasis added).  Tata has not argued that it is covered by the phrase "AT&T and its affiliates" and there is no evidence before the Court to support such a conclusion.  Therefore, Tata's employees are not "licensed End Users" and their use of YPPI's copyrighted images is outside the scope of the AT&T License.

This interpretation is consistent with use of the phrase "internal intranet" in the same provision.  According to Wikipedia:

> An **intranet** is a computer network for sharing information, collaboration tools, operational systems, and other computing services only ***within an organization, and to the exclusion of access by outsiders to the organization***. The term is used in contrast to public networks, such as the Internet, but uses most of the same technology based on the Internet Protocol Suite.
>
> …
>
> An intranet is sometimes contrasted to an extranet. ***While an intranet is generally restricted to employees of the organization, extranets may also be accessed by customers, suppliers, or other approved parties.*** Extranets extend a private network onto the Internet with special provisions for authentication, authorization and accounting (AAA protocol).

*See* https://en.wikipedia.org/wiki/Intranet (bold original, bold italics added). Use of the term "internal intranet", therefore, emphasized that use of YPPI's copyrighted images will be limited to persons within the AT&T organization—the "licensed End Users" to which the license grant is limited.

At the very least, the meaning of "licensed End Users" is ambiguous.  This ambiguity must be construed against the drafter (AT&T and, by extension, Tata) and presents fact questions for the jury.  *See Gonzalez*, 795 S.W.2d at 737; *Coker*, 650 S.W.2d at 394.  For

these reasons as well, the Court should deny Tata's First Supplemental SJ Motion.

    3.   <u>Tata is not entitled to use YPPI's images as a "contractor"</u>

Tata's argument that it is entitled to use YPPI's copyrighted images under the ATT&T License because it is "contractor" of AT&T strains credulity. Tata did not quote the "contractor" language in its full context to the Court – and for good reason. In context, it is clear that the "contractor" language does not expand the license grant in the AT&T License.

The "contractor" provision relied upon by Tata is not contained within the license grant of the AT&T License, but rather within the "Terms and Conditions" section. The test relied on by Tata is underlined within the provision containing it below, which provision states:

> **Program Protection and Security** – AT&T shall not provide or otherwise make available the Software in any form to any third party, except as provided in this Agreement. AT&T shall take appropriate action, by instruction, agreement or otherwise with the persons permitted access to the Software, to satisfy the obligations under this Agreement with respect to use, protection, and security of the Software. <u>AT&T's rights of disclosure under this Agreement shall include the right to provide the Software or other information of Supplier to AT&T's agents and contractors who have a need for it in connection with the performance of services for AT&T.</u>

Exhibit A, AT&T License, p. 7 (Underline added, bold original).

The "contractor" language relates to "disclosure in the context of "Program Protection and Security" <u>not</u> to use of YPPI's "Digital Images" to create advertising. "AT&T's right of disclosure" is the "it" that is the subject in the phrase "AT&T's agents and contractors who have a need for it." Thus, the expressed intent of this section is that AT&T may <u>disclose</u> the "Software" (read by Tata to mean YPPI's copyrighted images) to contractors of AT&T who have a need for such disclosure. This provision makes sense if the thing being disclosed is software and the concern requiring disclosure to AT&T contractors is protecting the security

of AT&T's computer systems.  It makes no sense at all in the context of using (not disclosing) YPPI's copyrighted images to Tata so that Tata can create ads.

The controlling rules of contract interpretation make this provision either non-applicable to Tata's use of YPPI's images or, at the very least, ambiguous.  The license grant contained at the very beginning of the AT&T License permits use of YPPI's copyrighted images only by "licensed End Users".  This limitation is explicit.  By contrast, the disclosure to "contractors" language relied upon by Tata conflicts with the explicit limitation to "licensed End Users" and is found at the very end of the "Terms and Conditions", which in turn are found at the very end of the AT&T License. These provisions can be harmonized only if one concludes that the "contractor" provision is restricted to "disclosure" and not use of the YPPI images.  "In harmonizing these provisions, terms stated earlier in an agreement must be favored over subsequent terms**."**  *Coker*, 650 S.W.2d at 393.  The license grant expressly limits use of YPPI's copyrighted images to "licensed End Users", while mere "disclosure" is permitted to "contractors" if needed for purposes of "program protection and security."  This way, both provisions are given meaning as is required, if at all possible.  *See Id.*

If, however, the Court determines that the use by "licensed End Users" restriction in the license grant and the "disclosure" to "contractors" language in the "Program Protection and Security" provision cannot be harmonized, the AT&T License is ambiguous.  *See Id*. In such an event, summary judgment is improper."  *See Id*. at 394.

4.  <u>Uncontested evidence shows the AT&T License was not intended to cover Tata</u>

If it is found that the AT&T License is ambiguous as to Tata's rights, the uncontested evidence revels that the parties to the AT&T License never intended outsourcers such as Tata

to be able to use YPPI's copyrighted images.  Texas law permits the Court to look to the "underlying circumstances to ascertain the true intent of the parties."  *See Id*.

The underlying circumstances show that YPPI and AT&T Services never intended outsourcers to be covered by the AT&T License.  In mid-2011, **AT&T Services requested that YPPI <u>amend</u> the AT&T License <u>a third time</u> to permit outsources to use YPPI images**.  *See* Deposition of Terry Thornton ("Thornton Depo.", the cited portions of which are attached hereto as Exhibit D), p. 56, lines 19-25, p. 53 1-13.  **YPPI rejected that proposed amendment**.  *See* Thornton Depo., p. 52, lines 6-25, p. 53, lines 1-13; Ex. B, Moore Dec., para(s). 5 and 6.  In response, AT&T told YPPI that it would no longer use YPPI images and undertook a time-consuming and expensive effort to remove YPPI images from use and segregated them into a "ZZZ folder".  *See* Ex. D, Thornton Depo., p.54, lines 4-18, 20-25 p. 55, lines 1-5, p. 62, lines 14-25, and p. 63, lines 3-11.   At a minimum, the underlying circumstances raise a genuine issue of material fact regarding whether the Tata had the right to use the YPPI copyrighted images under the AT&T License.

**B.   <u>Tata Has No Rights Under The AT&T License Because YP LLC and Print Media LLC Failed To Use The Required Copyright Notice</u>.[4]**

The license grant in the AT&T License expressly *conditioned* the license to use YPPI's images on the licensee's use of a particular form of copyright notice that was never used.  Specifically, the AT&T License requires use of a copyright notice "reflecting on the copyright ownership of both AT&T and Licensor [YPPI] as follows: "Copyright ©20__ [AT&T] and its

---

[4] Although Judge Honeywell found in the *YP* Case that the failure of YP LLC and Print Media LLC to include the copyright notice required by the license grant was a covenant, and not a condition, YPPI respectfully disagrees with that finding and intends to challenge it on appeal when the YP Case is ripe for appeal.

licensors.  All rights reserved." *See* Ex. A, AT&T License, p. 2.  AT&T even noted that copyright requirement in their internal communications regarding YPPI and apparently wanted to change the copyright notice requirement in the proposed amendment that YPPI rejected.  *See* Ex. D, Thornton Depo., p. 215, lines 20-25, p. 216, lines 1-18, and Ex. 25 thereto.  Yet, YP LLC and Print Media LLC have not used the required copyright notice on their directories containing YPPI's photos. Samples of copyright notices on YP LLC and Print Media LLC directories containing YPPI images are attached hereto as Composite Exhibit E.

It is clear that the copyright notice provision is a *condition* and not a covenant.  The relevant license grant in the AT&T License states:

> AT&T may incorporate any Digital Image(s) into its own original work and publish, display and distribute the work in any media ***provided that*** a copyright notice is included in any electronic or digital work reflecting on the the copyright ownership of both AT&T and Licensor [YYPI] as follows: "Copyright ©20__[AT&T] and its licensors.  All rights reserved."

Ex. A, AT&T License, p.2 (emphasis added).  Use of the term "provided that" imposes a condition on use of YPPI's copyrighted images and, therefore, is a condition and not a covenant of the AT&T License. On this point, Texas law is clear:

> In order to make performance specifically conditional, a term such as "if, "***provided that***," "on condition that", or some similar phrase of conditional language must normally be included.  If no such language is used, the terms will be construed as a covenant in order to prevent a forfeiture.

*Criswell v. European Crossroads Shopping Center, Ltd.,* 792 S.W.2d 945, 948 (Tex. 1990) (emphasis added); *see also Cedyco Corp. v. PetroQuest Energy, LLC*, 497 F.3d 485, 488 (5th Cir. 2007) (reversing entry of summary judgment).

14

**C. Tata Has Not Rights Under The AT&T License Because YP LLC And Print Media LLC Are Not AT&T "Affiliates".[5]**

Tata's argument that it has rights under the AT&T License depends entirely on AT&T Advertising L.P. being a party to that license. *See* Tata's First Supplemental SJ Motion, pp. 3-4. If AT&T Advertising L.P. is <u>not</u> a party to the AT&T License, then YP LLC and Print Media LLC are not AT&T "affiliates" and they enjoy no rights under the AT&T License. If YP LLC and Print Media LLC have no rights under the AT&T License, Tata's use of YPPI's copyrighted images for them cannot be covered by the AT&T License.

The AT&T License itself identifies "AT&T Services, Inc." as the party to it. The cover page of the AT&T Services License explicitly states that it is "between Yellow Pages Photo, Inc. and AT&T Services, Inc.". *See* Ex. A, AT&T License, p. 1. It then goes on to list "AT&T Services, Inc." as the "AT&T: Affiliate Name" and states that questions should be referred to Denise O. Davis at AT&T Services. *See Id*., p. 2. The AT&T License is signed by Denise O. Davis for AT&T Services, Inc. on behalf of AT&T Advertising, L.P., dba AT&T Advertising & Publishing. *See Id*., p.3.

Any confusion as to whether AT&T Services, Inc. is the real party to the AT&T License is cleared up by the amendments to it. The First Amendment to the AT&T License expressly states that it is "between Yellow Pages Photo, Inc. and AT&T Services, Inc. ('AT&T')". *See Id*., p. 9. The First Amendment then further states that "Supplier [YPPI] and AT&T [defined earlier as AT&T Services, Inc.] entered into Agreement No. 20071211.071.C", which again is

---

[5] Although Judge Honeywell found in the *YP* Case that both YP LLC and Print Media LLC are AT&T "affiliates" under the AT&T License, YPPI respectfully disagrees with that finding and intends to challenge it on appeal when the YP Case is ripe for appeal.

the AT&T License. *See Id*., p. 10. Finally, the First Amendment was executed by Denice O. Davis as "Sr. Contract Manager" of AT&T Services, Inc." *See Id*., p. 12. Nowhere does the First Amendment even mention "AT&T Advertising" or "AT&T Advertising & Publishing".

The Second Amendment to the AT&T License is similar. It also expressly states that it is "between Yellow Pages Photo, Inc. and AT&T Services, Inc. ('AT&T')". *See Id*., p. 13. The Second Amendment also states that it is "amending Agreement No. 20071211.071.C", which is the AT&T License and that "Supplier [YPPI] and AT&T [defined earlier as AT&T Services, Inc.] entered into Agreement No. 20071211.071.C". *See Id*., p. 14.

The AT&T License itself and its two amendments establish that AT&T Services, Inc., and not AT&T Advertising, L.P., is the party to that license. Thus, YP LLC and Print Media LLC lack rights under the AT&T License because they are not AT&T "affiliates" and Tata cannot bootstrap rights to that license under YP LLC and Print Media LLC.

**V.      TATA'S SECOND SUPPLEMENTAL SJ MOTION MUST BE DENIED**

Tata's Second Supplement SJ Motion claims that Tata's use of YPPI's copyrighted images to create ads for Dex Media, Inc. ("Dex Media") is permitted under the Verizon License. Tata further argues that, as a matter of law, YPPI is barred by *res judicata* from arguing that the July 26, 2007, amendment to the Verizon License (the "2007 Amendment") permitting users of YPPI's images to be "employees or contractors of Idearc" was procured by fraud. Tata next argues for the Court to determine, as a matter of law that the provision for termination of the Verizon License if a party files a bankruptcy petition does not provide for automatic termination, but instead requires YPPI to "exercise that option". *See* Tata's Second Supplemental SJ Motion, p. 2.   Finally, Tata argues YPPI cannot argue that it was fraudulently

induced to execute the 2007 Amendment because YPPI must rescind the license before suing for copyright infringement. Tata's arguments should all be rejected and its Second Supplemental SJ Motion denied.

A. **Res Judicata Does Not Bar Yppi From Arguing That The 2007 Amendment Was Procured By Fraud**

1. Required elements of *res judicata*

*Res judicata* is another name for the doctrine of "***claim*** preclusion". Names are important. Here, Tata asserts that *res judicata* a/k/a claim preclusion bars ***not a claim*** by YPPI, but rather YPPI's assertion of an avoidance to one of Tata's affirmative defenses. Because Tata's *res judicata* argument is not asserted against a claim, that argument fails.

Perhaps not coincidentally, Tata fails to brief the elements of *res judicata* in support of its argument. A review of those elements shows that *res judicata* cannot bar YPPI's argument that the 2007 Amendment to the Verizon License was fraudulently induced.

Eleventh Circuit precedent dictates that a claim will be barred by the doctrine of claim preclusion (*res judicata*) "if **all four** of the following elements are present:

(1) there is a final judgment on the merits;

(2) the decision was rendered by a court of competent jurisdiction;

(3) the parties, or those in privity with them, are identical in both suits; and

(4) the same cause of action is involved in both cases."

*Ragsdale v. Rubbermaid, Inc.*, 193 F. 3d 1235, 1238 (11th Cir. 1999) (emphasis added).

2. The elements required to apply *res judicata* are not present here.

Tata relies exclusively on the decision of the Delaware Bankruptcy Court in the "Dex Media Litigation" for its *res judicata* argument. *See* Tata's Second Supplemental SJ Motion,

pp. 12-14.  Yet, Tata fails to explain how each of the essential elements for the application of res judicata are met.  Perhaps the reason Tata avoids this analysis is that all the elements needed to apply *res judicata* are simply not present.

Although the first element, a final judgment, is met, prudence dictates that the Court be wary.  The final judgment relied upon by Tata is currently on appeal to the United States Court of Appeals for the Third Circuit.  *See* Declaration of Richard E. Fee ("Fee Dec.", attached hereto as Exhibit F), para. 4.  As such, it is susceptible to being overturned in whole or in part.  This Court's reliance on such a precarious ruling would risk a procedural and appellate imbroglio.

As to the second element, there is no dispute that the Delaware bankruptcy court was acting as a court of competent jurisdiction in the Dex Media Litigation.

The third essential element of *res judicata*, whether the parties or their privities in both cases are identical, is absent.  Tata's Second Supplemental SJ Motion does not argue (nor can it) that YPPI previously litigated against Tata.  YPPI **never** before litigated against Tata in any forum.  *See* Moore Dec., para. 11.  If there is not such privity, there is no claim preclusion based on the Dex Media Litigation.  Moreover, "whether a party is in privity with another for preclusion purposes is a **question of fact**".  *E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1285 (11th Cir. 2004) (emphasis added).

Tata provides this Court with no evidence that Tata and Dex Media should be found to be in privity.  Nor could it. Tata offers no evidence:

> (a)  it participated in the Dex Media Litigation;

> (b)  it consented to be bound by the Dex Media Litigation;

> (c) it participated in Dex Media's tactical maneuvering in the Dex Media Litigation; or

> (d) of a "close relationship" between Tata and Dex Media.

Thus, this Court can and should deny Tata's Second Supplemental SJ Motion based on Tata's assertion of *res judicata* on the lack of privity alone.

The fourth element of *res judicata* – the same cause of action is involved in both cases – is also absent. In this case, YPPI's cause of action is based on the actions of Tata, <u>not</u> those of Dex Media. YPPI's Amended Complaint [Dkt. #58] alleges that Tata has been and is infringing YPPI's federally registered copyrights:

> Since February 16, 2014, Tata has been copying, transmitting, and using many hundreds of YPPI Images in connection with its creation and production of many thousands of advertisements for telephone directories published by YP, Print Media, and Dex Media for municipalities and counties nationwide, including many advertisements appearing in directories that have been distributed and used in the Middle District of Florida ("Tata's Infringing Ads").

Amended Complaint, para. 18.

> Since February 16, 2014, Tata has also been copying, transmitting, and using YPPI Images in connection with its creation and production of webpages and other web-based media for customers of YP and Dex Media ("Tata's Infringing Web-based Media").

Amended Complaint, para. 20.

> At no time has YPPI licensed or otherwise authorized Tata to copy, transmit, or use any of the YPPI Images in connection with Tata's Infringing Ads, Tata's Infringing Web-based Media, or for any purpose.

> Tata's copying, transmitting, and use of YPPI Images in connection with Tata's Infringing Ads and Tata's Infringing Web-based Media directly infringes YPPI's federally registered copyrights in those YPPI Images in violation of the United States Copyright Act, 17 U.S.C. § 501.

Amended Complaint, paras. 24, 25. In sum, YPPI alleges that Tata's copying, transmission,

and use of YPPI's copyrighted images "[s]ince February 16, 2014" to create advertisements and web-based media for Dex Media, YP LLC, and Print Media LLC infringes YPPI's copyrights.

YPPI's claims against Tata were never raised, and could not have been raised, in the Dex Media Litigation. The Delaware bankruptcy court did not possess jurisdiction over Tata. The factual issue in the Dex Media Litigation, whether Dex Media infringed YPPI's copyrights by publishing infringing ads containing YPPI's copyrighted images in its yellow pages directories, is separate and apart from the issue here -- whether Tata used YPPI's copyrighted images in creating ads for YP, Print Media, and Dex Media.

Nor was the issue here, whether the 2007 Amendment to the Verizon License was procured by fraudulent inducement pled, briefed, or ruled upon in the Dex Media Litigation. The mere mention of a legal theory during a lengthy oral argument does not operate to later bar the assertion of that legal theory against a different party in a different case. Tata provides no legal support otherwise.

The cases cited by Tata in support of its res judicate theory are inapposite. None of them apply *res judicata* a bar to the assertion of a defense, let alone to bar the avoidance of a defense. For example, in *Madura v. Bank of America*, 2010 WL 2821936 (M.D. Fla. July 16, 2010), Judge Covington dismissed the Complaint, finding that "each and every ***claim*** that has been advanced in this action  . . .has been addressed and finally adjudicated" by a state court and by an earlier federal case and that the "appellate process in those cases has run its course." *Id*. at *3 (emphasis added); *see also Endsley v. City of Macon*, 321 Fed. Appx. 811 (11th Cir. 2008) (holing Section 1983 claims barred by *res judicata*); *Ragsdale*, 193 F.3d 1235 (finding

retaliatory discharge claim barred by *res judicata*). Here, YPPI's avoidance to Tata's affirmative defense of the Verizon License, based on fraudulent inducement of the 2007 Amendment, has never been litigated, let alone finally adjudicated, in any forum.

**B.  Summary Judgment Is Inappropriate On YPPI's Argument That The Verizon License Terminated Upon The Licensee's Bankruptcy**

In response to Tata's assertion of the Verizon License as an affirmative defense, YPPI has argued, as an avoidance, that the Verizon License terminated upon the licensee's filing for bankruptcy.[6]  Tata briefly argues (in less than a page) that this Court should grant summary judgement on YPPI's argument.  Tata is wrong.

The Verizon License contains a termination provision stating in relevant part:

13. Termination.

> b.      Either party may terminate this Agreement immediately and ***without further notice***:
>
>> ii.      if the other party files a voluntary petition for relief under Chapter 7, Chapter 11, or Chapter 13 of the United States Bankruptcy Code or any analogous statute of any country;

*See* Verizon License (which, together with its 2007 Amendment, is attached hereto as Exhibit G), p. 12 (emphasis added).

Nothing in the Verizon License's termination provision requires notice of termination by the party that has not filed for bankruptcy protection.  Rather, the termination provision states that the Verizon License may be terminated "immediately and without further notice" if

---

[6] It is uncontested that Idearc, SuperMedia, and Dex Media all filed voluntary petitions for bankruptcy.

either party files for bankruptcy.

Tata argues that the Verizon License's termination provision requires notice. *See* Tata's Second Supplement SJ Motion, p. 15.  Yet, the termination provision does not require notice. Tata's interpretation of the termination provision would require the Court to insert a non-present notice provision.  Texas law, which governs the Verizon License (*see* Verizon License at p. 13, para. 17) prohibits doing so:

> We have long held that ***courts will not rewrite agreements to insert provisions parties could have included*** or to imply restraints for which they have not bargained.

*Tenneco*, 925 S.W.2d at 646 (emphasis added).

The parties to the Verizon License clearly could have included a notice requirement within the termination provision.  Yet, they did not do so.  Inserting a notice requirement into the Verizon License's termination provision would constitute legal error under Texas law.

At the very least the termination provision of the Verizon License is ambiguous as to whether the party not filing for bankruptcy needs to provide notice of termination to the filing party.  Here, Verizon was the drafter of the Verizon License.  *See* Ex. B, Moore Dec., para. 8. Under Texas law, it is

> well-established that where an ambiguity exists in a contract, the contract language will be construed strictly against the party who drafted it since the drafter is responsible for the language used.

*Gonzalez*, 795 S.W.2d at 737.  Thus, the termination provision should be strictly construed against Dex Media, as Verizon's claimed successor in interest, and also against Tata, who is asserting rights through Dex Media.  In any event, the ambiguity presents a fact question that precludes entry of summary judgment on this issue.

**C.** **Summary Judgment Is Inappropriate On YPPI's Argument That The 2007 Amendment to Verizon License Was Procured by Fraudulent Inducement.**

YPPI has argued fraudulent inducement as an avoidance to Tata's affirmative defense of the Verizon License.  Specifically, YPPI argues that, although the Verizon License was breached in 2005 and 2006 by Idearc impermissibly transferring YPPI's images to overseas outsourcers,[7] Idearc concealed and failed to inform YPPI of that breach when it requested the 2007 Amendment.  YPPI argues that it would not have agreed to the 2007 Amendment if YPPI had known that Idearc breached the Verizon License.  *See* Ex. B, Moore Dec., para(s). 9 and 10.  Tata's affirmative defense of the Verizon License depends on the 2007 Amendment, which extended the permitted use of YPPI images to "contractors", because Tata claims rights under the license as a "contractor".

Tata now argues that the Court should enter summary judgment against YPPI's fraudulent inducement avoidance because YPPI has not formally rescinded the Verizon License.  Tata is wrong.

First, Tata's argument relies on an inapplicable legal proposition. Specifically, Tata relies on the proposition that:

> A "license must formally be rescinded before **an infringement action based on fraudulent inducement** of a copyright license can proceed."

Tata's Second Supplemental SJ Motion, p. 16, citing *TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 93 (2d Cir. 2005) (emphasis added).  Here, **YPPI's copyright infringement action against Tata is _not_ based on fraudulent inducement** of a copyright license.  Rather,

---

[7] Idearc's breach of the Verizon License and related finding of copyright infringement is uncontested.

YPPI's Amended Complaint expressly alleges that Tata "is not now and has never been one of YPPI's licensees". Amended Complaint [Dkt. #58], p. 1. YPPI's Amended Complaint makes no mention, whatsoever, of the Verizon License, the 2007 Amendment, or fraudulent inducement. It is Tata that has injected the issue of the Verizon License and the 2007 Amendment into this case by asserting the Verizon License as an affirmative defense.

Moreover, YPPI did not believe and still does not believe that the Verizon License survived the 2009 Idearc bankruptcy.[8] It would have been illogical and nonsensical to require that YPPI rescind the 2007 Amendment to the Verizon License before bringing suit against Tata, which is not even a party to that license.

Tata's reliance on the Second Circuit's decision in *TVT Records* is misplaced. The plaintiff copyright holder in the *TVT Records* case sued its former licensee, which is not the case here. Tata is not now and never has been party to a license with YPPI. *See* Ex. B, Moore Dec., para. 12. Moreover, unlike the case in *TVT Records,* Tata is not the party that committed the fraudulent inducement of the 2007 Amendment. Thus, YPPI could not have asserted a claim against Tata for fraudulent inducement or sued Tata to rescind the 2007 Amendment.

In short, Tata's argument to preclude YPPI from arguing that it was fraudulently induced to enter into the 2007 Amendment to the Verizon License simply lacks merit. Tata's Second Supplemental SJ Motion on this point should be denied.

---

[8] Although it will not argue the "failure to assume" theory at trial, that argument is still being advanced by YPPI in an appeal pending in the United States Third Circuit Court of Appeals, Case No. No. 18-3785.

## VI.     CONCLUSION

For all the reasons set forth above, this Court should deny Tata's First and Second Supplemental SJ Motions in their entirety.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 13, 2020, a true and accurate copy of the foregoing was electronically filed with the Court by using CM/ECF system, which will send a notice of electronic filing to:  **Gary R. Trombley, Esq.**, **Ronald P. Hanes, Esq.**, and **P. Matthew Luka, Esq.**, TROMBLEY & HANES, P.A., 707 N. Franklin St., 10th Floor, Tampa, FL  33602  (gtrombley@trombleyhaneslaw.com,   rhanes@trombleyhaneslaw.com,   and mluka@trombleyhaneslaw.com); **Eric F. Leon, P.C.**, **Kuangyan Huang, Esq.**, and **Nathan E. Taylor, Esq.**, LATHAM & WATKINS LLP, 885 Third Ave., New York, NY 10022 (eric.leon@lw.com,   kuan.huang@lw.com,   and   nathan.taylor@lw.com),   *Counsel for Defendant.*

*/s/ Richard E. Fee*
Richard E. Fee
Florida Bar No. 813680
Kathleen M. Wade
Florida Bar No. 127965
Cristina A. Castellvi
Florida Bar No. 55519
FEE & JEFFRIES, P.A.
1227 N. Franklin Street
Tampa, Florida 33602
(813) 229-8008
(813) 229-0046 (Facsimile)
rfee@feejeffries.com
kwade@feejeffries.com
ccastellvi@feejeffries.com
bszabo@feejeffries.com

*Counsel for Plaintiff,*
*Yellow Pages Photos, Inc.*