# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

YELLOW PAGES PHOTOS, INC.,

    Plaintiff,

v.                                              No. 8:17-cv-388-T-02CPT

TATA CONSULTANCY SERVICES
LIMITED,

    Defendant.

_____/

## **ORDER ON AMENDED MOTIONS FOR SUMMARY JUDMENT**

Plaintiff is the owner of copyrighted digital images. Plaintiff contends here that the Defendant TCS is infringing upon Plaintiff's copyrighted images by using them to create advertisements (mostly yellow page directory ads) for three non-party yellow pages publishers, YP, LLC ("YP"), Print Media, LLC ("Print Media"), and Dex Media, LLC ("Dex"). Before the Court are two amended motions for summary judgment. They are discussed, serially, below. The Court grants Defendant's supplemental Motion for Summary Judgment (Dkt. 167) on the "Verizon License." The Court denies Defendant's supplemental Summary Judgment Motion (Dkt. 154) on the "AT&T License."

**Court's Ruling on Dkt. 167, Regarding the "Verizon License"**

The Defense has restated its motion for summary judgment on this point at Dkt. 167 with a Plaintiff rebuttal response at Dkt. 170.  The Court grants summary judgment to Defendant TCS on this issue.  The Court finds no material issue of fact that the "Verizon License"[1] flows through to enable the contractors of Dex Media (here, Defendant TCS) to use without infringement those images licensed under the Verizon License.  The Amended Complaint seeks recovery for many images.  Dkt. 58 at 1–3.  Those images used by Dex's contractor TCS that were provided under the "Verizon License" are not infringing.  There is no genuine issue of fact on this point.  The affirmative defense of license in this regard is not realistically in contest.

1. *The Relevant History on the "Verizon License"*

There is a dense history involving this license.  The Court truncates it here as much of it is not relevant.[2]  Stated in a manner most favorable to Plaintiff, in 2001 Plaintiff's principal sold 5000 stock photographic images to Verizon Directories, pursuant to a license.  Verizon paid Plaintiff's principal and predecessor company $660,000 for these images.  In the original license, there were prohibitions upon

---

[1] Dkt. 170-7; *also* Dkt. 167-3.  The license was amended in 2007 by this Plaintiff and Dex Media's predecessor to permit contractors of licensee to use the images.
[2] These facts, most favorably construed for Plaintiff, are set forth in a brief filed by Plaintiff's present counsel in the District Court of Delaware.  *See In Re: Dex Media, Inc.*, Case No. 1:17-cv-00265MN, Dkt. 12 (D. Del. May 5, 2017).  The facts are much denser than set forth here.

transfers of the images. In 2006 Verizon Directories changes its name to Idearc Media Corp. ("Idearc"). At some point in 2005–2006, Idearc transferred some images in breach of the license to third parties. In 2007 Plaintiff and Idearc amended the "Verizon License" to permit contractors of the licensee to use the images.

Idearc filed bankruptcy in Texas, and emerged as a reorganized entity in 2009 called Super Media LLC. In 2013 Super Media commenced a pre-packaged bankruptcy in the District of Delaware, which emerged from Chapter 11 with Super Media becoming a wholly-owned subsidiary of Dex Media. This plan was confirmed in April 2013. Plaintiff sued Super Media in this bankruptcy. Plaintiff first contended that the Verizon License did not survive the Idearc bankruptcy in Texas. Plaintiff dropped this contention and, after contested and difficult litigation, Plaintiff was awarded roughly $300,000 in damages against Super Media due to image transfers in violation of the Verizon License. This lengthy bankruptcy adversary proceeding concluded in April 2016.[3] These damages were for pre-petition transfers by Super Media.

Upon conclusion of this bankruptcy, that same month Plaintiff then sued Dex Media in the Middle District of Florida, for post-petition infringement of the

---

[3] The very convoluted record in this case makes it easiest to cite as source of these facts the brief filed by Plaintiff. *See* note 2, *supra*, at 20–26. However, the Delaware Bankruptcy Court and District Court opinions also lay out the history.

images that were originally licensed under the Verizon License.  The Florida District Judge stayed the matter when the Delaware Bankruptcy Court, where Dex Media had filed a defensive Declaratory Judgment action and a motion to consolidate the cases, exercised jurisdiction.  Plaintiff then filed two counterclaims in the Delaware litigation, asserting 1) Direct infringement by Dex and 2) induced infringement by Dex using others as contractors, including Defendant TCS.

The Delaware Bankruptcy Judge ruled against Plaintiff in a reported opinion.  *In Re. Dex Media*, 564 B.R. 208 (Bankr. D. Del. 2017).  The District Court affirmed in a 43-page opinion.  *In Re. Dex Media,* 595 B.R. 19 (D. Del. 2018).  The Delaware case is now on appeal to the U.S. Third Circuit Court of Appeals.

### 2. *The Present Litigation and Court's Ruling*

In the instant law suit, Plaintiff has changed its position as to why the "Verizon License" does not apply to permit TCS as a Dex Media contractor to use those 5000 images originally licensed.  In its original opposition to summary judgment on this issue Plaintiff stated firmly that "[Plaintiff] asserts that the Verizon License did <u>not</u> pass through the Idearc bankruptcy."  Dkt. 123 (sealed) at 3; Dkt. 118 at 3 (unsealed) (emphasis in original).  As to the Verizon License Plaintiff stated: (1) The Verizon License "was breached in 2005, or 2006 and (2) because the breach was not cured, the Verizon License could not have been

4

assumed in the Idearc bankruptcy." *Id.* at 15.  Plaintiff stated that the Delaware Bankruptcy Court found the "Verizon license terminated when it was breached, as determined by the Delaware bankruptcy court in its April 4, 2016 ruling." *Id.* at 15 (citing TCS' MSJ Ex. 1 (Dkt. 103-2) at 8, 11–12,19–20).  Plaintiff stated "[Plaintiff]'s position that T[CS] has no rights under the Verizon license is based on the April 4, 2016 rulings of the Delaware bankruptcy court[.]" Dkts. 118, 123 at 16.  But the Delaware Bankruptcy Court made the opposite ruling in 2017 as to existence of the Verizon License, finding it very much alive, as discussed below.

Plaintiff stated at the pretrial conference that it has now receded from its earlier contention that the Verizon License failed to survive the Idearc bankruptcy. This is the second or third time in this convoluted series of lawsuits that Plaintiff has asserted and then abandoned this "failure to survive" theory.[4]  Plaintiff states it will not assert this position further in these proceedings.  Dkt. 167-4 at 16–17; Dkt. 170 at 24 n.8.  Rather, Plaintiff now contends that the Verizon License is inapt because 1) the 2007 amendment that permitted contractors was fraudulently induced by Idearc in 2007 due to undisclosed breaches occurring in 2005–2006;

---

[4] For a description of what the Delaware District Judge called this "flip-flop" and abandonment, *see In Re. Dex Media, Inc.*, 595 B.R. at 35–37.  Concerning these changing positions, the District Court found that "the record provides ample support for the conclusion that YPPI acted with an intent to play fast and loose with the Court." *Id.* at 38, *see also id.* at 39 (noting "ample evidence in the record from which an inference of deliberate manipulation could be drawn").
   The undersigned does not find bad faith.

5

and 2) the Verizon License, by its own paragraph 13(b), automatically terminated by the various bankruptcies.

These positions are new to this case. In its earlier opposition to Defendant's summary judgment motion, Plaintiff never mentioned either fraudulent inducement of the amendment, or automatic termination due to bankruptcy. *See* Dkt. 123 (sealed) and 118 (unsealed).

In the most recent round of Delaware litigation, between Plaintiff and Dex Media, Plaintiff sought recovery via counterclaim alleging that Dex directly infringed Plaintiff's images, and also because Dex indirectly induced infringement by, *inter alia,* present Defendant TCS. *See* Dkt. 167-5 at 27–28. TCS, a nonparty, was specifically listed in Count II as an induced infringer, induced by Dex Media. *Id.* Plaintiff lost that Delaware suit, notwithstanding Plaintiff's argument there that the 2007 amendment to the Verizon License to permit contractors was fraudulently induced by the earlier undisclosed breaches. *See* Dkt. 167-2 at 60 (transcript with Plaintiff arguing: "fraudulent inducement. . . . [E]ven if this Court found that there is a license, whether it's a ride through or whatever, those third parties [contractors] aren't authorized.").

The Bankruptcy Court expressly rejected this argument, and held that the Verizon License "remains in full force and effect." *In Re. Dex Media, Inc.*, 564 B.R. at 217, *aff'd In Re. Dex Media, Inc.,* 595 B.R. 19 (D. Del. 2018). The

Bankruptcy Court held that any earlier breach prior to the 2007 amendment [nondisclosure of which Plaintiff contended as the fraudulently-inducing act] was "cured" by the damages the Judge imposed, *see* 564 B.R. at 217, and the Verizon License agreement "remains intact and property of the estate." *Id.* Plaintiff did not prevail on its Count II counterclaim that Dex Media induced a copyright infringement by Defendant TCS. The Court ruled that Dex Media did not infringe any of Plaintiff's copyrights as alleged in Plaintiff's counterclaim. The Court dismissed with prejudice Plaintiff's claims in that regard, including Count II that claimed Dex Media induced TCS' infringement of Plaintiff's images. *See In Re. Dex Media, Inc.*, Case No. 16-51026-KBO, Dkt. 55 (Bankr. D. Del. Mar. 8, 2017), *aff'd by USDC, In Re. Dex Media, Inc.*, 595 B.R. 19 (D. Del. Nov. 28, 2018).

In the text of this dismissed Count II, Plaintiff described the concealment of the breaches circa 2005–2006 that Plaintiff now contends effected a fraudulent inducement of the license amendment. *Id.* at Dkt. 27 at 18.

Before ruling that the Verizon License was in full effect and dismissing with prejudice the induced TCS-related infringement count, the Bankruptcy Court took direct argument from Plaintiff's present counsel. Counsel argued that the 2007 amendment to the Verizon License permitting contractors was fraudulently induced. Plaintiff's present counsel told the Bankruptcy Judge that Dex was paying third parties [TCS as alleged in Count II] to produce ads, and "those third-

7

party outsourcers are not authorized to use those images . . . ." Dkt. 167-2 at 49. Counsel argued that the prior breaches were fraudulently hidden and uncured in bankruptcy—thus suggesting that the Verizon License failed to survive. To suggest that the license remained valid in such circumstances, counsel argued, was "gravely inequitable, it's inappropriate". *Id.* at 57–58. And counsel also argued:

> [T]here's one other reason that the [Verizon License] amendment would not apply, beyond the technical law. If YPPI couldn't be a part of the contract YPPI couldn't be a party to the amendment, which is more important.[5]
>
> This Court found that YPPI was never informed of the breaches that occurred back in 2005 and 2006. The amendment was a 2007 amendment. There is a doctrine that's called fraudulent inducement. If I come to you and say, "I'd like to amend the contract to give these other folks a chance to do things."
>
> Now I don't tell you that they'd been doing them for two years plus, you don't have all the facts you need to address it. I'm—they didn't come and say, "Hey, I've been breaching the license. That's okay, right? Can we back paper this a little bit? Can we make it okay?"
>
> No, they concealed their breach, just like they concealed it in the Idearc case. And they, they have the gall to ask them to sign an amendment to authorize the unauthorized uses that they'd been doing prolifically starting back two years earlier.
>
> So again, even if this Court found that here is a license, whether it's a ride through or whatever, those third parties aren't authorized. And boy, if you pay somebody to do what you know is copyright infringement, that's copyright infringement, too.
>
> . . .

---

[5] This statement is inapt. YPPI, the present Plaintiff, was the signatory on the Verizon License amendment that permitted contractors to use the images. *See* Dkt. 167-3 at 20; Dkt. 170-7 at 20.

8

>And the facts are that their predecessor lied to YPPI, lied about breaching the license, apparently lied to people about when transfers occurred and when those breaches occurred. Those lies have consequences, positive for them, and now, negative for them. But that's what happens when you lie. You get both ends of it.
>
>. . .
>
>And it has different consequences in terms of your rights to continue to use a license that you've breached when you hit that breach.

Dkt. 167-2 at 59–62 (footnote added).

Plaintiff squarely placed and squarely argued before the Bankruptcy Judge the issue that the 2007 license amendment to permit contractors was fraudulently induced by nondisclosed prior breaches. The argument failed entirely. That Court dismissed with prejudice the claim that Dex Media induced infringement by its contractor TCS. The Court found the license to be alive and well.

Plaintiff asks this Court to permit a jury to decide if the Verizon License amendment is void ab initio. In effect, Plaintiff asks this Court to overrule the Delaware Bankruptcy Judge, as well as the U.S. District Judge who affirmed his ruling. But this issue was presented, and fully litigated in Delaware for collateral estoppel purposes.

The Eleventh Circuit teaches that for an issue to be fully litigated for collateral estoppel purposes, the inquiry "is not addressed to the quality or quantity of evidence or argument presented. Instead, it only requires that an issue was effectively raised in the prior action, and that the adverse party [Plaintiff] had a fair

9

opportunity to contest the issue." *Community Bank of Homestead v. Torcise*, 162 F.3d 1084, 1087 n.6 (11th Cir. 1998) (quoting *Walters v. Betts*, 175 B.R. 636, 646 (Bankr. N.D. Ga. 1994)).

Issue preclusion or collateral estoppel precludes the relitigation of an issue that has already been litigated and resolved in a prior proceeding. *In re. Southeast Banking Corp.*, 69 F.3d 1539, 1552 (11th Cir. 1995); *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986). Collateral estoppel applies if "(1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding." *I.A. Durbin*, 793 F.2d at 1549.

The Court concludes that 1) this Plaintiff and this lawyer expressly argued fraudulent inducement to the Delaware Bankruptcy Judge as a reason the license amendment was void (the same argument Plaintiff repeats here); 2) after taking argument and briefing that Judge held expressly the Verizon License was in full force and effect; and 3) that Judge then held that Dex Media (TCS' contractee and supplier of the subject images) was not infringing on Plaintiff's rights with these images; 4) that Judge further dismissed with prejudice Count II, that claimed Dex

was inducing TCS' infringement by TCS using these images for Dex; and 5) that Bankruptcy Judge was affirmed on appeal, after this Plaintiff and this lawyer took a full USDC appeal.[6] This is sufficient to take from the jury the issue as to whether the license amendment is void ab initio for fraudulent inducement.

Plaintiff will contend that the two proceedings, Delaware and here, are insufficiently the same to collaterally estop Plaintiff on this issue. In both proceedings the same Plaintiff alleged that the same TCS as a Dex contractor infringed the same images. In both of these proceedings the same Plaintiff's counsel argued the same license amendment is nil due to the same acts of fraudulent inducement. One should expect the same ruling—but Plaintiff urges the opposite.

In this regard, the Restatement (Second) of Judgments, Section 27 provides some analysis. Even considering this Restatement balancing analysis[7], the Court believes the analysis supports preclusion on this issue.

---

[6] The matter is pending appeal now before the U.S. Third Circuit Court of Appeals.
[7] *Id.* § 27 cmt. c, which states: "One of the most difficult problems in the application of the rule of this section is to delineate the issue on which litigation is, or is not, foreclosed by the prior judgment. The problem involves a balancing of important interests: on the one hand, a desire not to deprive a litigant of an adequate day in court; on the other hand, a desire to prevent repetitious litigation of what is essentially the same dispute. When there is a lack of total identity between the particular matter presented in the second action and that presented in the first, there are several factors that should be considered in deciding whether for purposes of the rule of this Section the 'issue' in the two proceedings is the same, for example: Is there substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first? Does the new evidence or argument involve application of the same rule of law as that involved in the prior proceeding? Could pretrial preparation and discovery relating to the matter

Plaintiff's second position, that the entire Verizon License was terminated automatically because of one of the intervening bankruptcies, also fails. Plaintiff cited section 13(b) of the Verizon License Agreement which permits termination without notice upon a bankruptcy filing. But Section 13(b) plainly requires an act of termination. *See* Dkt. 170-7 at 12. It is not unclear. Termination is not automatic. And that provision was never invoked. *See* Feb. 20, 2020 Hearing Tr., Dkt. 160 at 43.

Plaintiff has invoked this Verizon License for recovery, and alternately urged that it is invalid, in the various litigations. The clarity of Section 13(b) and its fatality to Plaintiff's position spares the Court from having to address the serious judicial estoppel issues here.

For the foregoing reasons, the images licensed under the Verizon License, Dkt. 170-7 as amended, are not infringing. Summary judgment is granted concerning those images. The Motion at Dkt. 167 is granted.

## The Court's Ruling on the "AT&T" License, Dkt. 154

Plaintiff sued YP and Print Media for direct infringement in a case pending in this District before the Hon. Charlene Honeywell, Case No. 8:17-cv-764-T-36JSS. In November 2019, Judge Honeywell found that YP and Print Media, as

---

presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second? How closely related are the claims involved in the two proceedings?"

12

affiliates of the AT&T entity, are licensees under a license previously entered into between Plaintiff and AT&T. *See* Dkt. 154-2. This license between Plaintiff and AT&T can be found at Dkt. 170-1. The parties agree the license is governed by Texas contract law.

Plaintiff has here sued Defendant as a third-party contractor of YP and Print Media. Defendant claims that the AT&T License covers contractors, and thus the license that covers YP and Print Media covers Defendant as a contractor.

The Plaintiff has filed a response to this supplemental motion at Dkt. 170; *see also* Reply at Dkt. 171. Defendant's Motion is straightforward: Defendant states that the AT&T License "unambiguously allows contractors to use YPPI's images." The Court disagrees. The Court agrees with Plaintiff that sufficient facts exist to require Defendant to try this affirmative defense to the jury.

In order to put a party out of court on a contract term at summary judgment, the term has to be plain and clear. It cannot be unclear and subject to reasonable dispute. In this regard, Texas law[8] is consistent with common sense. Putting aside subjective intent or the parole evidence offered by Plaintiff, the Court is unable to state that the AT&T License permits subcontractors making yellow page advertisements to use the copyrighted works. *See generally*, *Garcia v. RC Cola 7-*

---

[8] *E.g.*, *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

*Up Bottling Co.*, 667 S.W.2d 517, 520 (Tex. 1984) (noting the plain text as expressed in instrument is primary concern).

Defendant's best argument is to remove language from the whole of the contract, and to quote helpful text: "AT&T's rights of disclosure under this Agreement shall include the right to provide the Software or other information of Supplier to AT&T's agents and contractors who have need for it in connection with the performance of services for AT&T." Dkt. 170-1 at 6–7. This language, helpful to Defendant, comes at the end of the contract as part of the heading "Program Protection and Security." It appears to be related to providing access for system security purposes. The language conflicts with the substantive text outlining the terms of the license, which are bullet-pointed and boxed prominently in the first, main part of the document. *See* Dkt. 170-1 at 2–3. This main, substantive portion of the document requires the licensee to "(i) copy the Digital Images on to AT&T's server for unlimited End Users (ii) use the Digital Images in AT&T's business locations" . . . and provide a copyright notice upon each digital image created or distributed. Dkt. 170-1 at 2. Defendant has not filed proof of each of these tasks being accomplished.

A fair reading of Plaintiff's response at Dkt. 170 suggests a factual dispute on this topic.[9] It would be unjust to find, at this stage, that Defendant has proven beyond all factual dispute its affirmative defense of the AT&T License. Therefore Dkt. 154 is denied.

**DONE AND ORDERED** at Tampa, Florida, on March 26, 2020.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record

---

[9] The Court has reviewed the Nimmer treatise and the cases offered by TCS which discuss lesser contractual "covenant" remedies which may arise, short of an infringement remedy, or "condition." Judge Honeywell discussed this concept in the related YP/Print Media suit. The Court understands TCS' position. The logic of this concept fades when the alleged infringer is a third-party (like TCS) who is not under contract with the copyright owner. In such a situation, the owner has no remedy at all against the third-party infringer under the concept TCS suggests.